**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARLA FOXMAN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 19-21712 (FLW) |
| | : | |
| v. | : | |
| | : | OPINION |
| ANDREW M. SAUL, | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant, | : | |
| | : | |

**WOLFSON, Chief Judge:**

      Marla Foxman ("Plaintiff") appeals from the final decision of the Commissioner of Social Security, Andrew M. Saul ("Defendant"), denying Plaintiff disability benefits under Titles II and XVI of the Social Security Act (the "Act").  Specifically, Plaintiff argues, *inter alia,* that the Social Security Administration's decision to cease her benefits for engaging in substantial gainful activity was in error, and that the Administrative Law Judge ("ALJ") erred by finding that Plaintiff was not entitled to re-open her prior disability application.  Plaintiff also asserts that the ALJ failed to combine Plaintiff's various medical impairments in conducting Step Three of the disability analysis.  After reviewing the administrative record, the Court finds that remand is appropriate for the ALJ to determine whether Plaintiff was entitled to re-open her prior disability application and/or seek reinstatement of her disability benefits.  Accordingly, the ALJ's decision is vacated and remanded for reconsideration.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

      **a.  Plaintiff's Initial Disability Application and the Cessation Decision**

In December 2009, Plaintiff was found totally disabled as a result of her mental impairments, including "depression, battered woman syndrome and post-traumatic stress disorder" ("PTSD") and awarded disability insurance benefits dating back to March 1, 2007. A.R. 108-115. On May 19, 2016, after Plaintiff had been receiving disability benefits for several years, she was informed via letter that she "may not be eligible for disability payments" (the "Cessation Decision"). A.R. 116. Specifically, the letter provided that the Social Security Administration ("SSA") had reviewed Plaintiff's

> work and earnings for November 2012 through May 2016. Our review shows that, because of your work, you may not be eligible for disability payments for October 2015 and continuing. We have not decided if you can still get disability payments. You can still give us more information about your work.

*Id*. The letter explained that Plaintiff's extended period of eligibility for benefits began in June 2008 and ended in October 2015, as a result of her work activity. A.R. at 118. It also enclosed a chart detailing Plaintiff's monthly work and earnings between November 2012 and October 2015. A.R. 120-22. The letter further provided that Plaintiff should contact the SSA within 10 days of receipt and urged her to either call the toll-free number provided or contact her local Social Security Office. A.R. 116.

Plaintiff explains that she visited her local social security office on May 24, 2016, and importantly, "was guided by the Commissioner's representatives to reapply for the same benefits." Pl. Br. at 2.

b. **Plaintiff's Second Disability Application**

On May 24, 2016, nine days after receiving the Cessation Decision, Plaintiff filed a new application for disability insurance benefits, based upon various ailments, including, depression, anxiety, PTSD, Type II diabetes, fatty liver disease, high blood pressure, hypothyroidism, and

2

vision issues, dating back to March 1, 2007. A.R. 218-19, 251. Plaintiff's initial application and a subsequent motion for reconsideration were both denied. A.R. 125-38, 142-147. Thereafter, Plaintiff requested a hearing, which was held on November 27, 2018, before ALJ Nancy Lisewski. A.R. 32-49. In a written decision, dated November 27, 2018, the ALJ determined that Plaintiff was not disabled between October 1, 2015, the date her benefits were ceased, through the date of the ALJ's decision. A.R. 12-26. Plaintiff requested review by the Appeals Council, which was denied on April 22, 2019. A.R. 1-5. On December 20, 2019, Plaintiff filed the instant appeal challenging the ALJ's decision.

### c. The ALJ's Findings

On November 27, 2018, the ALJ issued a written decision denying Plaintiff's application for disability benefits. A.R. 12- 16. As an initial matter, the ALJ noted that Plaintiff had previously filed an application for disability benefits and received benefits through October 2015, when her benefits were discontinued because she engaged in substantial gainful activity. A.R. at 12. In the ALJ's view, Plaintiff had "received all benefits that could possibly be awarded to her through October 1, 2015." *Id*. Taking into consideration the applicable regulations as well as Social Security Ruling 91-5, the ALJ found "no basis upon which to reopen the determinations on [plaintiff's] prior applications" and found that those decisions were "final and binding." *Id*. (citing 20 C.F.R. §404.929 and §416.1429). The ALJ concluded that "the issue of disability is res judicata, involving the same parties and legal questions," and therefore, the ALJ's opinion would "only consider the time period from October 1, 2015." *Id*.

The ALJ applied the standard five-step process in considering whether Plaintiff had satisfied her burden of establishing disability. A.R. 13-26. At Step One, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" after the cessation date of October 1,

2015. A.R. 15. The ALJ noted that although Plaintiff worked after that date, she earned "$12,913.17 for the calendar year 2015, which is below the monthly substantial gainful activity levels total of $13,080." *Id*.

Turning to Step Two, the ALJ found that Plaintiff had the following severe impairments "depression, anxiety, a learning disorder by history, and diabetes with neuropathy." A.R. 15. The ALJ further found that Plaintiff's other conditions – hypertension, obesity, fatty liver disease, gastroesphaflial reflex disease, thyroid disorder, and vision impairment – were each "non-severe." A.R. 16.

Moreover, at Step Three, the ALJ determined that these conditions together did not meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). A.R. 16-19. The ALJ explained that "[t]he medical evidence of record does not document signs, symptoms, and/or laboratory findings indicating any impairment or combination of impairments severe enough to meet the criteria of any listed impairment . . . . Specific consideration has been given to listings 9.00, 12.04, 12.06, 12.11, and SSR 14-2p." A.R. 17. The ALJ explained that diabetes mellitus may meet "the requirements of a listing if there is another impairment that, by itself, meets the requirements of a listing, or an impairment that, in combination with diabetes mellitus, meets the requirements of a listing." *Id*. The ALJ found that "[t]he claimant [did] not meet or equal the criteria in any other listing." *Id*.

The ALJ also concluded that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.11." *Id*. The ALJ noted that Plaintiff only had a "moderate limitation" in remembering or applying information and that she was able to "go shopping by computer, phone, and in the stores," as well as "maintain[] the memory and mentation to 'tell her sister what to get.'" *Id*. Similarly, the ALJ

4

concluded that Plaintiff had only a "moderate limitation" with respect to "interacting with others," "concentrating, persisting or maintaining space," and "adapting or managing oneself." A.R. 18. Accordingly, the ALJ concluded that "[b]ecause claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation," her mental impairments did not satisfy paragraph B of the listing. *Id*. Moreover, the ALJ found that the requirements of paragraph C were also unmet because Plaintiff "only requires medication management, and she has adjusted successfully to numerous familial losses without decompensation." A.R. 19.

At Step Four, the ALJ found that, although Plaintiff was "unable to perform past relevant work," A.R. 24, she possessed the residual functional capacity ("RFC") to perform "medium work" with some non-physical limitations. A.R. 19, 25-26.

## II.   DISCUSSION

### a.  Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id*. at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id*. at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability

6

benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id*. A claimant who does not have a severe impairment is not considered disabled. *Id*. at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in the Impairment List. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id*. at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id*. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(e);

*Bowen*, 482 U.S. at 141.  If the claimant is able to perform previous work, the claimant is determined to not be disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  *Plummer*, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled.  *Id*.

**II.        ANALYSIS**

Plaintiff raises two discrete arguments as to why the ALJ's decision should be remanded.  First, Plaintiff argues that the SSA's conclusion that she engaged in substantial gainful activity and her earnings exceeded the substantial gainful activity wage limits, and cessation of benefits were in error.  Pl. Br. 11.  Plaintiff contends that the ALJ should have construed her new disability application as a *de facto* appeal of the Cessation Decision, and the failure to do so denied her due process of law.  Pl. Br. at 13-26.  Second, Plaintiff argues that the ALJ improperly excluded her physical impairments, specifically, her "hypertension, obesity, fatty liver disease, reflux disease, and thyroid disease" from the analysis of Plaintiff's RFC.  Pl. Br. at 27-35.

**1.   The Cessation Decision**

Plaintiff argues that the SSA's initial determination that she engaged in substantial gainful activity was erroneous and the ALJ compounded the error by considering her filing as a new disability application, rather than construing the application as an appeal of the Cessation Decision.  Pl. Br. 13-26.  Plaintiff contends that in 2015, the limit for substantial gainful activity "was $1,090

monthly or an annual (x12) of $13,080." Pl. Br. at 2.  Plaintiff asserts that "her countable earnings as of the end of October 2015 were only $9,522. Plaintiff's earnings records kept by the Commissioner show an income of $12,913.17 . . . $167 less than the annual [substantial gainful activity] limit for 2015." *Id*.  Plaintiff highlights that the cessation of benefits was solely due to the erroneous conclusion that she was "earning substantial gainful activity on a sustained basis." *Id*. at 16.  As Plaintiff pointed out, the ALJ, in fact, found that she had not earned an amount in excess of the substantial gainful activity level in 2015. *Id*. at 16. Accordingly, Plaintiff asserts that her disability benefits should not have been ceased in the first place, and that her "new application" should have been construed as a *de facto* appeal of the Cessation Decision. *Id*. at 16-17.  In other words, Plaintiff argues that "since that cessation was predicated on the factually erroneous determination that Plaintiff was performing SGA, the ALJ who indirectly found that basis to be erroneous should have reopened the cessation determination and overturned it." *Id*. at 22 n. 9. Moreover, Plaintiff asserts that she was "never advised that she had a right . . . to appeal the Cessation Decision," but rather, that her local social security office mistakenly advised her to file a new appeal. *Id*. at 2.

To understand Plaintiff's arguments, a review of the relevant regulations is necessary. Individuals with disabilities who do not engage in substantial gainful employment are entitled to receive disability benefits. 42 U.S.C. §§ 423(a), (d)(1)(A), (e).  Indeed, "[d]isability" is defined as "the inability to do [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).  Under certain circumstances, however, a beneficiary may work and continue receiving disability benefits.  One

9

such situation is during a beneficiary's "trial work period," which allows a beneficiary nine months to test her ability to work and still be considered disabled. 20 C.F.R. § 404.1592.

During his or her trial work period, a beneficiary may work, and continue to receive benefits regardless of the amount of his or her earnings. 42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592(a). In relevant part, the regulations provide that the trial work period ends at the close of the ninth month (whether or not the months have been consecutive) in which the beneficiary performs work, in a 60-month period, even if the work does not rise to the level of substantial gainful activity. 20 C.F.R. § 404.1592(e)(2). After the trial work period, the beneficiary enters his or her extended period of eligibility, also known as the re-entitlement period, and may continue working during the next thirty-six months, so long as he or she does not engage in substantial gainful activity. 20 C.F.R. § 404.1592a(b)(2)(ii). Relevant here, the substantial gainful activity limit in 2015 was $1,090. However, that "[t]he first time [a beneficiary] work[s] after the end of [the] trial work period *and* engage[s] in substantial gainful activity, [SSA] will find that [a beneficiary's] disability ceased." 20 C.F.R. § 404.1592a(a)(1). In that scenario, the beneficiary is "paid benefits for the first month after the trial work in which [he or she] does substantial gainful activity (i.e., the month [his or her] disability ceased," and the two succeeding months, regardless of whether or not the claimant does substantial gainful activity in those succeeding months. 20 C.F.R. § 404.1592a(a)(2). After those three months, the SSA will stop the claimant's benefits for any month in which he or she performs substantial gainful activity. 20 C.F.R. § 404.1592a(a)(2)(i). If the claimant's benefits are stopped because he or she engages in substantial gainful activity, they may be started again automatically, if the claimant stops doing substantial gainful activity, and is still in the midst of his or her 36-month re-entitlement period. In determining whether he does substantial gainful activity in a month for purposes of stopping or starting benefits

10

during the extended eligibility period, SSA will consider only the claimant's work in, or earnings for, that month. 20 C.F.R. § 404.1592a(a)(3)(i).

Further, an individual whose disability benefits are terminated for performing substantial gainful activity, may, under certain circumstances, be eligible for expedited reinstatement of his or her disability benefits if his or her disability causes the individual to stop performing substantial gainful activity within sixty months. *See* 20 C.F.R. § 404.1592c ("Who is entitled to expedited reinstatement"); *Van Zutphen v. Saul*, No. 18-CV-00057-SI, 2019 WL 3891841, at *11 (N.D. Cal. Aug. 19, 2019) (noting that "expedited reinstatement of benefits. . . [is] a process which is available for claimants to regain entitlement to benefits when the SSA previously terminated disability benefits due to work activity.") When an applicant seeks reinstatement, the SSA uses the medical improvement standard of review, which is slightly more favorable for beneficiaries. 20 C.F.R. §§ 404.1592b and 404.1592c. Specifically, the regulations provide: "[t]he advantage of using the medical improvement review standard is that [the SSA] will generally find that [the applicant] [is] disabled unless [his or her] impairment has improved so that [he or she] [is] able to work or unless an exception under the medical improvement review standard process applies." 20 C.F.R. § 404.1592b.

The Government argues that the cessation of Plaintiff's disability benefits was appropriate, despite the fact that her total earned income for the year 2015 was below the threshold of $13,080, because her earnings in October 2015 exceeded the monthly substantial gainful activity level. Gov. Br. at 13. The Government contends that "[b]ecause Plaintiff was in her extended period of eligibility and showed earnings from 2009-2015 (prior to October), her trial work period had passed, and her benefits were ceased in October 2015, the first month she engaged in substantial gainful activity after her trial work period." Def. Br. at 14. While the Government concedes that

11

Plaintiff earned less than the substantial gainful activity limit of $13,080 in 2015, it argues that "this finding considers the entirety of 2015 and does not run contrary to the determination that Plaintiff's benefits should be ceased due to the earnings in October 2015 that exceeded substantial gainful activity levels." *Id*. at 15.  The Government further argues that "even though Plaintiff's new applications were filed within the ten-day appeal period from Plaintiff's cessation letter, the ALJ made a determination that the criteria found in 20 C.F.R. §§ 404.988 and 416.1488 for reopening were not met." *Id*.

Assuming the Government is correct and Plaintiff's benefits were appropriately ended because she performed substantial gainful activity after her trial work period ended, I, nonetheless, find that the ALJ erred by failing to consider whether Plaintiff was entitled to expedited reinstatement pursuant to 20 C.F.R. § 404.1592c. [1]  Plaintiff was found to be disabled beginning March 1, 2007, and began receiving her disability benefits in December 2009, following the decision date on her first disability application. A.R. 229.  According to the Cessation Decision, Plaintiff's trial work period began in May 2007, when she first began working, and her extended period of eligibility, or her re-entitlement period, began in June 2008, presumably after Plaintiff had worked between May 2007 and June 2008.  A.R. 117-118.  The Cessation Decision further provides that her extended eligibility period, during which time she was eligible for benefits in months where she earned less than substantial gainful activity, ended in October 2015.  A.R. 118.  Assuming, as the Government

---

[1] Here, there are several open questions regarding the propriety of the Cessation Decision, and Plaintiff is permitted to explore the issues on remand.  For example, the letter provides no explanation for why Plaintiff's extended eligibility lasted from 2008 through 2015, when the regulations provide that extended eligibility period lasts 36 months following the trial work period.  Nor is it clear why the Cessation Decision was sent to Plaintiff in May 2016, when her benefits had purportedly ceased several months earlier in October 2015.  Nonetheless, assuming, the Cessation Decision was correct, regardless, Plaintiff was presumably still entitled to seek expedited reinstatement.

asserts, that Plaintiff's extended eligibility period was over and she was not automatically entitled to the resumption of benefits, it appears that Plaintiff could have been eligible for expedited reinstatement. In order to request reinstatement, a claimant "must make [the] request in writing" have "stop[ped] doing substantial gainful activity within [sixty] months of [his or her] prior termination," 20 C.F.R. § 404.1592b, and make a "request for reinstatement in writing." 20 C.F.R. § 404.1592d. Second, the claimant "must not be able to do substantial gainful activity because of [his or her] medical condition." 20 C.F.R. § 404.1592b. Third, the claimant's "current impairment must be the same as or related to [the] prior impairment." *Id*. Fourth, the claimant "must be disabled[,]" under the medical improvement standard set forth in 20 C.F.R. § 404.1594. *Id*.

Here, Plaintiff sought disability based on the same ailments as her prior application, within sixty months of the Cessation Decision, and alleged that she could not perform substantial gainful activity. Further, Plaintiff alleges that she intended to seek reinstatement, but the staff at her local office gave her incorrect information regarding how to challenge the Cessation Decision, causing her to file a new application. In similar circumstances, other courts have found remand appropriate. *See Arteaga v. Comm'r of Soc. Sec.,* No. 19-CV-01630, 2020 WL 4369599, at *4 (E.D.N.Y. July 29, 2020) (remanding to ALJ for a hearing on plaintiff's continuing disability application where applicant's disability benefits were discontinued for failure to participate in continuing disability review but his local social security office directed him to file a new application, rather than an application for reinstatement causing him to file a new application). Critically, here, the ALJ's decision did not clearly consider whether Plaintiff met the requirement for reinstatement or explain why Plaintiff's new disability application – filed nine days after the Cessation Decision and premised on the same disabilities – was not construed as an appeal of the

13

Cessation Decision or an application for reinstatement. Moreover, construing Plaintiff's new disability application as a request for reinstatement could have potentially resulted in a more favorable decision for Plaintiff, because the burden would have been on the Government to show medical improvement, or that an exception to the medical improvement standard of review applied. *See* 20 C.F.R. § 404.1592b.

Moreover, I find the Government's reliance on 20 C.F.R. §§ 404.988 and 416.1488 to justify not re-opening Plaintiff's prior application inapposite.  Those regulations provide the conditions under which the SSA may reopen a prior disability application, and seemingly do not expressly resolve the question of reinstatement.  *See* 20 C.F.R. §§ 404.988 (conditions for reopening); 416.1488 (good cause for reopening); 404.988  ("Hearing before an administrative Law Judge—General").  Nor does the ALJ's reference to those regulations expressly consider whether they preclude Plaintiff from seeking expedited reinstatement.  Indeed, the ALJ's decision merely provides, without explanation, "[t]he undersigned finds no basis upon which to reopen the determinations on the claimant's prior applications (20 CFR 404.988 *et seq.* and 416.1488 *et seq.*)." A.R. 12.  There is no indication that the ALJ expressly considered whether Plaintiff was entitled to expedited reinstatement, or whether, Plaintiff's new application could be considered an appeal of the Cessation Decision.  As such, I find that the ALJ's failure to consider whether reinstatement may have been appropriate justifies remand, regardless of the ALJ's analysis with respect to Plaintiff's medical condition because "[e]ven if supported by substantial evidence [ ], a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (3d Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (3d Cir. 2004)).  Accordingly, I find remand appropriate for the ALJ to

consider whether Plaintiff was eligible for expedited reinstatement, and if so, whether Plaintiff was disabled under the medical improvement standard.

## III.     CONCLUSION

For the reasons set forth above, this matter is remanded to the ALJ for further proceedings consistent with this Opinion.  An appropriate Order shall follow.


DATED: March 29, 2021

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge